# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Chaim Rubinstein, Individually and On Behalf of All Others Similarly Situated, | Case No: **19-3641** |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| Weight Loss Products, LLC and Beth Golden 310 46th Ave N Saint Petersburg, FL 33703-3904 | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff, Chaim Rubinstein ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, based upon personal knowledge as to himself and his own acts and upon information and belief and the investigation of counsel as to all other matters, alleges as follows:

**Introduction**

1. On June 17, 2014, the Federal Trade Commission ("FTC") testified before the United States Senate Commerce Subcommittee on Agency Efforts to Combat Fraudulent and Deceptive Claims for Weight-Loss Products, informing the subcommittee of the prevalence of fraud in the consumer weight-loss marketplace, stating in part:

    > Last year, Americans were expected to spend $2.4 billion on weight-loss services, and this figure is predicted to rise to $2.7 billion by 2018. Where there is strong consumer interest, unfortunately fraud often follows. In our 2011 survey of consumer fraud, the FTC reported that more consumers were victims of

fraudulent weight-loss products than of any of the other specific frauds covered by the survey.

2. On a second consumer protection front, the FTC has taken action against marketers of personal care products that deceptively claim their products are "all natural," "100% Natural," or otherwise misrepresent the extent to which a product is natural as opposed to synthetic. Indeed, The Federal Trade Commission ("FTC") has made clear in its official pronouncements, rules and orders—to which this Court affords deference-- that it is false and deceptive to advertise or package a product as all natural or 100% natural if it contains one or more synthetic ingredients. The FTC has also made clear in its official pronouncements, rules and orders that "[i]f companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word."[1]

3. This action addresses the practices of defendants Weight Loss Products, LLC and its managing Member Beth Golden ("WLP") which transgress both of the FTC's concerns, specifically, in the unlawful, unfair, and deceptive scheme in the production, distribution, advertising, labeling, marketing, and sale of RK Pure Raspberry Ketone Capsules (the "Formula") (i) as a "fat burner," (ii) as Natural, and (iii) as "100% Natural."

**Defendants' False and Misleading Labeling and Advertising of the Product**

4. Through its website at https://www.hcgdietplan.com WLP falsely and deceptively represents its Formula to be a "fat burner," "Natural" and "100% Natural:"

---

[1] See https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate; see also *In re California Naturel,* https://www.ftc.gov/system/files/documents/cases/161212_docket_no_9370_california_naturel_final_order.pdf



WLP misleadingly and deceptively states:[2]

- Dr. Oz recently outlined the amazing fat burning benefits of Raspberry Ketones on an episode of his show, touting it as a "weight loss miracle" This powerful fat burning supplement has taken the world by storm and is considered to be a groundbreaking leap forward in weight loss.

- 100% PURE, NATURAL Raspberry Ketone Capsules (not petroleum based)

- **RK PURE 250 RASPBERRY KETONE**: 250 mg of 100% Pure Raspberry Ketone (natural) per capsule. NO wheat, gluten, corn, soy, salt, yeast, dairy, artificial colors or flavors, sweeteners or preservatives.

- Each RK 250 capsule contains 250mg of 100% pure RK Raspberry Ketone provide extremely high anti-oxidants and raspberry ketone are in a completely natural form in RK 250 capsules and the **Oil Free Raspberry Ketone Body and Face Lotion**

- Don't settle for imitations, synthetics . . . Our product is 100% pure and NATURAL and contains 250mg of Raspberry Ketones PER CAPSULE.

Each and every above representation is materially false.

---

[2] https://www.hcgdietplan.com/products/raspberry-ketone-pure-250

5. In fact, neither Formula specifically nor raspberry ketones generally have been validated as a "fat-burner" in human beings, contrary to WLP's many representations.[3] Nor is the Formula "Natural" or "100% Natural."[4]

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiff and certain members of the Class are citizens of states different from that of Defendants.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants have intentionally availed themselves of the laws and markets within this District through the manufacturing, promotion, marketing, distribution, and sale of the Product here, and Plaintiff resides in this District.

## FACTS

### A. The 100% Natural Claim

7. Raspberry ketones are aromatic compounds found within red fruits and berries. Similar compounds, which contribute to the fruity smell, also occur in other fruits such as kiwis, peaches and apples; and vegetables like rhubarb.

8. Rubus idaeus, the binominal name for raspberry ketones, is biosynthesized from coumaroyl-CoA. It can be extracted from the fruit, yielding about 1–4 mg per kg of

---

[3] "As scientific literature is inherently vulnerable to misinterpretation by the general public, health and safety claims made by marketing campaigns do not always align with the latest peer-reviewed scientific evidence."[3] See "Human and Environmental Toxicity of Sodium Lauryl Sulfate (SLS): Evidence for Safe Use in Household Cleaning Products (Nat'l Inst. of Health 2015)," reprinted at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4651417/

[4] https://www.hcgdietplan.com/products/pure-raspberry-ketone-capsules-3-pack

raspberries. Such an extraction is natural in the key sense, as does wine from grapes, that it occurs in nature without chemical processing and reaction that alter molecular structure.

9. Since the natural abundance of raspberry ketone is very low, it is synthesized industrially by a variety of methods *from chemical intermediates*. One of the ways this can be done is through a crossed aldol condensation followed by catalytic hydrogenation, two organic chemical reactions.

10. Raspberry ketone is sometimes used in perfumery, in cosmetics, and as a food additive to impart a fruity odor. It is one of the most expensive natural flavor components used in the food industry. The natural compound can cost as much as $20,000 per kg. Synthetic raspberry ketone is exponentially cheaper, with estimates ranging from a couple of dollars per pound to one fifth of the cost of the natural product.

11. WLP uses synthetic raspberry ketones, and *not* natural Rubus idaeus, in the Formula.

### B. The "Fat Burner" Claim

12. The FTC has consistently required that efficacy claims for diet supplements (such as Formula) that are not regulated by the U.S. Food and Drug Administration ("FDA") be substantiated prior to their propagation.[5] New York law requires adherence to FTC

---

[5] *See, e.g.*, https://www.ftc.gov/news-events/press-releases/2015/05/ftc-halts-deceptive-marketing-bogus-weight-loss-products; https://www.ftc.gov/news-events/blogs/business-blog/2014/10/first-ftc-rosca-case-challenges-bogus-bogo-free-claims; https://www.ftc.gov/news-events/blogs/business-blog/2015/05/double-spammy; https://www.ftc.gov/news-events/press-releases/2004/03/ftc-charges-qvc-home-shopping-channel-making-deceptive-claims-and; https://www.ftc.gov/news-events/blogs/business-blog/2014/09/high-school-skinny-claims-are-thin-proof; https://www.ftc.gov/news-events/press-releases/2004/08/two-maine-dietary-supplement-marketers-pay-nearly-1-million; https://www.ftc.gov/news-events/press-releases/2010/01/marketers-unproven-weight-loss-products-ordered-pay-nearly-2; https://www.ftc.gov/sites/default/files/documents/reports/deception-weight-loss-advertising-workshop-seizing-opportunities-and-building-partnerships-stop/031209weightlossrpt.pdf

guidelines.[6] WLP propagates the deception, if not untruth, that "Raspberry Ketones have been clinically tested and shown to help break down and burn fat . . . ."

https://www.hcgdietplan.com/products/pure-raspberry-ketone-capsules-3-pack

12. Some laboratory research on rats and mice suggests that consuming super-high doses of raspberry ketones may help rodents stave off weight gain.

13. Marketers of raspberry ketones used as supplements and formulae purportedly containing raspberry ketones have, "with a wink and a nod," relied upon long discredited and inapplicable studies and trials to persuade *humans* that raspberry ketones are "fat burners" and safe to use.

14. Serious science has rejected the notion that raspberry ketones burn fat and cause weight loss in humans or, at least, that scientific substantiation of such "fat burning" properties exists:

> Right now, there is no reliable scientific evidence that raspberry ketone improves weight loss when taken by people . . . Importantly, there is insufficient reliable information available about the safety of raspberry ketone.[7]
>
> Even though it's regarded as a fat-burning supplement, there is really no strong evidence that it does that . . . The scientific data in humans does not exist and has not caught up with the enthusiasm. I'd rather just suggest my patients eat actual raspberries, which are a whole food.[8]

---

[6] New York Courts have historically followed the FTC pronouncements as to deceptive consumer sales and marketing practices: "[i]ndeed, § 349 was enacted 'to follow in the steps of the [FTC] with respect to the interpretation of deceptive acts and practices outlawed in Section 5 of the [FTC] Act.' *State by Lefkowitz* v. *Colo. State Christian Coll. of Church of Inner Power, Inc.*, 76 Misc. 2d 50, 346 N.Y.S.2d 482, 487 (N.Y. Sup. Ct. 1973)." *Braynina v. TJX Cos.,* 2016 U.S. Dist. LEXIS 131562, at *18 (S.D.N.Y. 2016).

[7] Ginger Hultin, registered dietitian nutritionist and spokesperson for the Academy of Nutrition and Dietetics, quoted at L. Esposito, "What's the Deal With Raspberry Ketones?", at https://health.usnews.com/health-care/patient advice/articles/2018-02-28/whats-the-deal-with-raspberry-ketones

[8] Kristin Kirkpatrick, registered dietitian at Cleveland Clinic's Wellness Institute, quoted *id.*

15. As recently as November 6, 2018, experts have attested that the notion that raspberry ketones affect weight loss in humans is entirely without reliable scientific substantiation:[9]

> There is not a single study on raspberry ketones in humans. The only human study that comes close used a combination of substances, including caffeine, raspberry ketones, garlic, capsaicin, ginger and synephrine.
>
> In this eight-week study, people cut calories and exercised. Those who took the supplement lost 7.8% of their fat mass, while the placebo group lost only 2.8%. However, the raspberry ketones may have had nothing to do with the observed weight loss. The caffeine or any of the other ingredients could be responsible. Comprehensive studies in humans are needed before the effects of raspberry ketones on weight can be fully assessed.
>
> **SUMMARY** There is no evidence that raspberry ketone supplements can cause weight loss in humans. More research is needed.

16. Institutions such as the Cleveland Clinic Foundation, cited *supra*, the Mayo Clinic,[10] Massachusetts General Hospital,[11] and the UK's Professional Jockeys Association[12] dispute the existence of reliable substantiation for the weight-loss claims advanced by marketers of raspberry ketones.

17. As stated in Gunnars, cited *supra* n.5, the December 2017 study of 70 humans taking a formula including*, but not limited to* raspberry ketones,[13] has been roundly rejected by the scientific community, including the Mayo Clinic and the National Institutes of Health:[14]

---

[9] See K. Gunnars, "Do Raspberry Ketones Really Work?" at https://www.healthline.com/nutrition/do-raspberry-ketones-work#human-effects;
[10] https://www.mayoclinic.org/healthy-lifestyle/weight-loss/in-depth/weight-loss/art-20046409
[11] https://www.livescience.com/39972-raspberry-ketone-supplement-facts.html
[12] http://www.thepja.co.uk/wp-content/uploads/2014/08/Raspberry-Ketones.pdf
[13] https://www.ncbi.nlm.nih.gov/pubmed/23601452
[14] https://ods.od.nih.gov/factsheets/WeightLoss-HealthProfessional/  See also n. 7, *supra (*" . . . the supplement included multiple ingredients, making it impossible to judge which ingredients helped the weight loss."

| | | | |
|---|---|---|---|
| Raspberry ketone | Alters lipid metabolism | Studied only in combination with other ingredients<br><br>**Research findings**: Insufficient research to draw firm conclusions | No safety concerns reported in one 8-week study, but not well studied<br><br>**Reported adverse effects**: None known |

18. The Formula is "snake oil" and yields no material fat burning benefits to anyone.

**CLASS ACTION ALLEGATIONS**

19. Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly situated members of the Class, as defined below, pursuant to the Federal Rule of Civil Procedure 23(a) and (b)(3). This class action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. The Class is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased the Formula, not for resale or assignment, within the State of New York within the applicable statute of limitations (the "Class").

20. Excluded from the Class are: (1) Defendants and their subsidiaries, affiliates, employees, officers, directors, assigns, and successors, as well as any entities or divisions in which any of the Defendants have a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; and (3) anyone asserting claims for personal injury in connection with the Formula. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

21. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained from records maintained by, and in the possession and control of, Defendants,

Plaintiff reasonably estimates that the Class consists of tens of thousands of Class members.

22. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class. These common questions predominate over any questions affecting only individual Class members and include, but are not limited to, the following:

    a. Whether Defendants engaged in a pattern of fraudulent, deceptive, and misleading conduct targeting the public through their manufacturing, marketing, advertising, promotion, distribution, labeling, and sale of the Formula;
    b. Whether Defendants misrepresented the natural content of the Formula;
    c. Whether the acts and omissions of Defendants violated Section 349 or 350 of NYGBL;
    d. Whether Defendants should be enjoined from the continued unlawful marketing, advertising, promotion, distribution, labeling, and sale of the Formula;
    e. Whether Defendants made material misrepresentations of fact, or omitted to state material facts to Plaintiff and the Class, regarding the manufacturing, marketing, promotion, and advertising of the Product, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiff and the Class;
    f. Whether Plaintiff and the Class have sustained damages as a result of Defendant's actions; and
    g. Whether the actions of Defendants were willful and malicious, or manifested with knowing and reckless indifference and disregard toward the rights of Plaintiff and the Class, warranting punitive damages.

23. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class, as Plaintiff and all Class members purchased the Product after exposure to the same material misrepresentations and/or omissions appearing the Product's bottle label, Defendants' websites, and/or other forms of advertising. Plaintiff and Class members have suffered the same injury as a result. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Class.

24. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel highly experienced in prosecuting class actions, including actions involving consumer goods and dietary supplements. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of the Class.

25. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the individual Class members' claims, absent a class action, most Class members would likely find the cost of litigating their claims against Defendants to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the time and resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## SOLE CLAIM FOR RELIEF

**(Violations of NYGBL §349-350 on Behalf of the New York Subclass)**

26. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

27. Defendant's business acts and practices and/or omissions alleged herein constitute unfair and deceptive acts or practices under §§ 349-350 which were enacted to protect the consuming public from those who engage in deceptive or unfair acts or practices in the conduct of any consumer-oriented business, trade, or commerce.

28. The practices of Defendants, as described herein, were specifically directed to consumers and constitute the following: (i) advertising goods with intent not to sell them as advertised, (ii) representing that a product has performance characteristics, uses or benefits, e.g. fat burner representations, it does not have; and (iii) representing a product to be of a certain standard or grade, e.g. Natural and 100% Natural, when the product is not of such standard or grade.

29. Defendants' 100% Natural and Fat-Burner Claims lacked substantiation, but Defendants claimed to the contrary, violating NYGBL §§349-350.

30. Plaintiff read and relied on Defendant's representations, namely, the "Fat Burner," "Natural" and "100% Natural" claims appearing in Defendant's online advertisements and on the label of the Product as represented in Defendant's online advertisement and marketing materials.

31. After having read the all of the foregoing and in reliance thereon, Plaintiff purchased the Product on or about March 11, 2019, at www.hcgdietplan.com.

32. Plaintiff took the Product as directed and initially suffered stomach aches. Plaintiff continued to take the Product and had instances of indigestion and heartburn. Nevertheless, Plaintiff took the Formula for about one month still seeking results but, unfortunately, did not lose any weight. Plaintiff concluded that the Formula was not a Fat Burner and sought further information as to its "Natural" and "100% Natural" Claims." Plaintiff thereafter confirmed his suspicions of having been duped.

33. Plaintiff seeks to hold Defendant accountable for its wrongdoing, end its unfair and deceptive practices, and recover for the class damages as permitted under NYGBL §§349-350.

34. Defendants' actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as many others purchasing the Product, as a result of and pursuant to Defendants' generalized course of deception.

35. By committing the acts alleged herein, Defendants have misled Plaintiff and the Class into purchasing the Product, in part or in whole, due to erroneous beliefs that the Product is natural, 100% natural, and a proven fat-burner. These are deceptive business practices that violate the NYGBL §§ 349-350.

36. Defendants' subject claims misled Plaintiff, and are likely in the future to mislead reasonable consumers acting reasonably under the circumstances. Had Plaintiff and other members of the Class known of the true facts about the Formula, they would not have purchased it. By Defendants' own admissions in their advertisements, Plaintiff and the Class ought not "settle" for the synthetic Formula and a consumer acting reasonably would have no reason to, and would not, purchase such a product.[15]

37. The foregoing acts, omissions and practices set forth in connection with Defendants' manufacturing, marketing, and sales of the Formula proximately caused Plaintiff and other members of the Class to suffer injury. The Class is entitled to appropriate damage relief, attorneys' fees and costs of suit pursuant to NYGBL §§349-350.

WHEREFORE Plaintiff, on behalf of himself and the Class, prays as follows:

    a. An order certifying this case as a class action, designating Plaintiff as the representative of the Class and his counsel as class counsel;

    b. Statutory damages for the Class pursuant to NYGBL §349;

---

[15] "Don't settle for imitations, synthetics or other formulas diluted with green tea, acai berry and other ingredients that can dilute the effect of Raspberry Ketones. Our product is 100% pure and NATURAL . . . . " https://www.hcgdietplan.com/products/raspberry-ketone-pure-250

c. Actual damages and Punitive Damages;

d. Attorney fees; and

e. Costs.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

/s/Mark Schlachet
Mark Schlachet
Law Offices of Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390
Email:
markschlachet@me.com

***Attorney for Plaintiff and the Putative Class***